JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
McDowell, Josh
McDowell, Liliana

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matias J. Adrogue, PLLC
1629 W Alabama Street, Houston, Texas 77006
(713) 425-7270

### DEFENDANTS
Bath & Body Works, LLC

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause: Products Liability-Exploding Candle

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $ _____    CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  02/02/2024    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSH MCDOWELL & LILIANA MCDOWELL | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| | § | |
| | § | Civil Action No. _____ |
| v. | § | |
| BATH & BODY WORKS, LLC, BATH & | § | Jury Trial Demanded |
| BODY WORKS, INC., RETAIL STORE | § | |
| OPERATIONS, INC., BEAUTY | § | |
| SPECIALTY HOLDING, LLC, GLOBAL | § | |
| TECH INDUSTRIES, INC., L BRANDS, | § | |
| INC., AND ALENE CANDLES INC. | § | |
| *Defendants*. | | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

COMES NOW, Plaintiff, JOSH MCDOWELL for damages against Defendants, BATH & BODY WORKS, LLC, BATH & BODY WORKS, INC., RETAIL STORE OPERATIONS, INC., BEAUTY SPECIALTY HOLDING, LLC, GLOBAL TECH INDUSTRIES, INC., and L BRANDS, INC., AND ALENE CANDLES, INC. showing this Court as follows:

### I. PARTIES

1.      Plaintiffs Josh McDowell and Liliana McDowell are citizens of the State of Texas and resides in the home located at 1016 West Snyder Street, Alvin, Brazoria County, Texas 77511.

2.      Defendant, Bath & Body Works, LLC is, upon information and belief, a limited liability company formed in Delaware with a principal place of business in Ohio. This Defendant may be served with process by serving its registered agent Corporation Service Company, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever they may be found. **CITATION IS REQUESTED.**

3.      Defendant, Bath & Body Works, Inc. is, upon information and belief, a company formed in Delaware with a principal place of business in Ohio. This Defendant may be served with process by serving its registered agent CT Corporation System, at 350 N. St. Paul. Street. Dallas, Texas 75201, or wherever they may be found. **CITATION IS REQUESTED.**

4.      Defendant, Retail Store Operations, Inc. is, upon information and belief, the sole member of Bath & Body Works, LLC and a corporation formed in Delaware, with a principal place of business in Ohio. This Defendant may be served with process by serving its registered agent CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever they may be found. **CITATION IS REQUESTED.**

5.      Defendant, Beauty Specialty Holding, LLC's sole member is Bath & Body Works, Inc., a publicly traded corporation formed in Delaware with a principal place of business in Ohio. This Defendant may be served with process by serving its registered agent the Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801, or wherever they may be found. **CITATION IS REQUESTED.**

6.      Defendant, Global Tech Industries, Inc. ("Global Tech"), is a domestic profit company with its principal place of business located in Cornelia, Georgia. This Defendant may be served with process by serving its registered agent Corporation Service Company, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever they may be found. **CITATION IS REQUESTED.**

7.      Defendant, L Brands, Inc. ("L Brands") is a foreign corporation with its principal place of business in Columbus, Ohio. This Defendant may be served with process by serving its registered agent Corporation Service Company, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever they may be found. **CITATION IS REQUESTED.**

8.     Defendant Alene Candles Inc. is a foreign corporation with its principal place of business in Ohio.  This Defendant may be served with process by serving its primary business address, at 8860 Smith's Mill Road, New Albany, Ohio, 43054, or wherever they may be found. **CITATION IS REQUESTED.**

9.     At the time of manufacture of the candle in this complaint, upon information and belief, L Brands was the sole member of Bath & Body Works LLC.

10.    For purposes of this Complaint, Bath & Body Works, LLC, Bath & Body Works, Inc., Retail Store Operations, Inc., Beauty Specialty Holding, LLC, and L Brands are collectively referred to as "Defendants."

11.    At all times relevant to this complaint, Defendant Global Tech is and was engaged in the business of designing, manufacturing, distributing, and/or selling, among other things, candles for consumer use, and was authorized to distribute and sell such candles in the State of Texas, including the three-wick candle that is the subject of this lawsuit.

12.    At all times relevant hereto, Defendant Global Tech may be liable to Plaintiff for the damages suffered and are collectively referred to herein as the "Global Tech."

## II. JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship, in that the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds, exclusive of interest and cost, the sum of $75,000.00.  Jurisdiction is further conferred upon this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2).

14.    This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privileges and benefits of conducting business activities in Texas by placing their candle products into the stream of commerce with the knowledge that they would be

used in Texas and by being authorized to conduct business in the State of Texas. Furthermore, the Defendants' contacts with the forum are continuous and substantial and because the claims of Plaintiff arise out of Defendants' contact with the forum.

15.     Venue is therefore proper in the Court pursuant to 28 U.S.C. 1391(b)(2), because the event giving rise to this suit occurred in this judicial district, and at the time of filing, which is when venue is set, Plaintiff are residents in this venue.

16.     Plaintiff in this cause seeks damages in excess of the $75,000.00 jurisdictional limit of this Court, exclusive of interest and costs.  Plaintiff Josh McDowell suffered significant burn injuries and trauma as a result of flashover/flare-up from a candle designed, manufactured, marketed, and distributed by the Defendants and Global Tech.

## III. STATEMENT OF THE CASE

17.     This case arises out of the common and expected use of three-wick fragrance candles as developed, designed, manufactured, marketed, and sold by Defendants, including but not limited to 14.5-ounce, Surf Shop, three- wick candles.

18.     Errors in design (close placement of three wicks within selected diameter) and manufacture (improper fragrance load) resulted in a dangerous and out-of-specification flame height that led to an explosive flashover/flare-up event directly on the stomach and left leg of Josh McDowell. Although the unreasonable risk of danger was unknown by Plaintiff, the Defendants possessed constructive, if not actual, notice that its three-wick candles as designed posed a risk greater than expected.

19.     Defendants were further aware of ongoing reports by consumers of unexpected flare-ups of its 14.5-ounce fragrance candles with the three-wick design, and yet chose not to alter its design or manufacturing processes to more accurately verify fragrance loads, or provide specific warnings or safety instructions particular to this unique risk.  Such failure to provide sufficient and

reasonable warnings to consumers such as Plaintiff herein substantially contributed to the damages alleged.

20.     Indeed, upon information and belief, Defendants have known for more than 18 years of the dangers associated with wick placement and use of fragrant oil in its three-wick candles. Defendants were aware by at least the year 2011 of an increase in abnormal flaring and flashover events plaguing three-wick fragrance candles being marketed and sold.  Nevertheless, Defendants opted to actively conceal the enhanced risks and refused to alter the design, manufacturing, or quality control processing of the subject candles. Such failure to provide sufficient and reasonable warnings to consumers such as the Plaintiff herein substantially contributed to the damages alleged.

21.     Defendants had a duty to correct its defective design concerning the spacing of the wicks and allowance for sufficient size of the glass opening, and further to strengthen its quality control processes in fragrance application.   Considering its unique position regarding reports of dangerous flame heights and flare-ups, Defendants certainly possessed a legal obligation to fairly warn consumers not only of the risk, but further provide safety warnings and instructions on how a consumer can safely react when the propensity of flashover/flare-up becomes a manifested reality.

22.     Despite having notice of risks associated with the design of these candles and proof of the failures in manufacturing process control, Defendants press forward without alteration in the design, manufacturing control, warnings, or safety instructions associated with the subject candles.

### A. Design, Manufacture, and Sale of Three-wick Scented Candles

23.     Defendants are responsible for the design, development, fragrance, container, wicks, product labeling, and quality control (inclusive of product testing) of the three-wick candles sold bearing the mark of Defendants, including but not limited to the Bath & Body Works 14.5-ounce, Surf Shop, three-wick scented candle.

24.     According to the label placed on the bottom of the candle, the three-wick Surf Shop candle purports to provide "fragrance notes" that include oceanside birch, sparkling waves, summer spruce, sage, and natural essential oils.   Such "fragrance notes" are oil blends poured into the wax during the manufacture of the candles.

25.     According to Bath & Body Works' website:

> "*What's the easiest way to turn your house into a home? Our 3-Wick Candles. We could list tons of reasons why, but here are our top four:*
> - *Made with essential oils*
> - *Beautiful room-filling fragrances*
> - *Amazing quality from beginning to end*
> - *Every candle is 100% guaranteed*
>
> *It's no wonder we've developed a bit of a cult following. Candles are the perfect partner for cozying up on chilly days, hanging out warm summer nights and entertaining company during every dinner party of the year…*
>
> *…Where are the best places to put candles, you ask? Coffee tables, dining rooms, kitchens, patio tables, counters and islands – basically anywhere you need a fragrance boost or pop of style…*
>
> *…P.S. The World's Best 3-Wick Candles also make the ultimate gifts…for every person, every occasion and every reason. You can't go wrong."[1]*

26.     To the extent Defendants contracted with other entities or suppliers, including subsidiaries or related entities, for design assistance, materials, or manufacturing such entities are joint venturers and agents of Defendants whose identities are not specifically known by the Plaintiff until initial discovery has been completed.

27.     Defendant Global Tech is the  entity informally identified in that matter as the entity, working contemporaneously and jointly with Bath & Body Works in the development and manufacturing of the subject candles. According to Bath & Body Works, Inc., "vendors are selected based on their ability and commitment to meet the strict safety and quality standards required by

---

[1]  http://www.bathandbodyworks.com/c/home-fragrance/3-wick-candles

our brand and U.S. government organizations ***.   We hold our suppliers, wherever they are

based, strictly accountable for compliance with all applicable laws and our company standards." [2]

28.    Bath and Body Works assert it is "committed to providing high-quality, safe, and

effective products for our customers." [3]

### B. Knowledge and Intent to Conceal

Plaintiff is informed and believes that:

29.    For several years prior to Josh McDowell's use of the Bath & Body Works candle,

consumers were reporting unexpected flaring of Bath & Body Works three-wick fragrance candles

that resulted in dangerous flashover/flare-up events.  Indeed, prior to the Plaintiff's use of the subject

three-wick candle, Bath & Body Works was involved in multiple lawsuits[4] regarding the propensity

of these candles to spontaneously flashover/flare-up resulting in significant personal injuries and

property damage.

30.    Complaints submitted online to www.saferproducts.gov further confirms
knowledge of the defect and the Defendants' lack of care:

- Report #20130305-52E0F-2147458180 (3/01/2013)

  > I have been using Slatkin 3 wick candles for years.  This year I ordered
  > the new winter scents.  The other day it had been burning for about 3 hrs.
  > I left the room and when I returned 3-inch flames were shooting up.  If I
  > had been sleeping on the couch or had been involved in doing laundry,
  > etc., it could easily have burned my house to the ground.  I still have about

---

[2] https://customercare.bathandbodyworks.com/app/answers/detail/a_id/3155/~/where-are-bath-%26-body-works-products-made%3F

[3] *Id.*

[4] By way of example only, Plaintiffs note the following litigation: *Adams v. Bath and Body Works, Inc.* 358 Ill.App.3d 387 (Ill. App. Ct. 1st Dist. 2005); *Placida Marte v. Bath & Body Works, LLC,* Civil Action No.:13-139 (N.J. Dist. 2013); *Kristen Dellavecchio v. Slatkin & Co., et. al,* Civil Action 13-1145 (N.J. Dist. 2013); *Crystal Lakes v. Bath and Body Works, LLC,* Cause No. 2:16- cv-2989 (E.D. Cal. 2016); *Kadisha Rodriques v. Bath & Body Works, LLC, et. al.,* Civil Action 1:17-cv-02480 (N.D. Ga. 2017); *Chemore Mellette v. Bath & Body Works, LLC, et. al.,* Case No. 8:17-cv-02999 (S.D. Md. 2017); *Brawley v. Bath & Body Works, LLC, et. al.,* Case No. 3:18-CV-02098-S (N.D. Tx. 2019); *Melendez v. Bath & Body Works, LLC, et. al.,* Case No. 1:22-cv-01869-JGK (S.D. N.Y. 2022).

4-5 of their candles and love them, but now I'm afraid to take my eyes off them. Please check them closer and make necessary adjustments. These have just come out on the market and I pray that something tragic doesn't come from someone else's experience.

- Report #20150819-B90C0-2147429201 (8/17/2015)

  My fire department was dispatched for a possible kitchen fire, arrived to find the occupant outside, occupant stated that she was cooking lunch and had a candle going in the kitchen, candle was going for around an hour. Occupant stated that when she turned around the candle had approx. 3 foot flames coming from it, occupant stated that when they tried to put the fire out with a glass of water the glass holder exploded and the flames did not go out. I went inside to investigate and found the base of the candle still burning with the high flames, first attempt with a small glass of water did not extinguish the fire, a second glass did. Doing research on this product there has been recalls in the past for "high flames".

- Report # 20150919-B2858-2147428254 (10/20/2015)

  We were in our home and had a candle burning for about 45 minutes when we hear a loud "bang" from the kitchen, location of the candle. We went to investigate to only discover out countertop was on fire in 3 spots. The candle had exploded and sent shards of glass all over the room and we had to put the fire out quickly. The fire caused irreparable damage to our countertop. This is a HUGE safety concern. If we hadn't responded within seconds or God forbid had we been showering, taking the trash out, or any other activity cause us to be away longer than seconds, our entire apartment would have went down in flames. We were just charged $350 to replace the countertop at our apartment due to the damage this candle caused. The candle was not previously cracked as we had burned it before, and there was nothing even remotely close to the candle to spark the fire or cause the explosion. We could have easily lost our lives that evening, and now to add more stress to us, we are paying for the damage caused by this candle and not any mishandling we had part in at all. This is not ok. We are completely mortified that this product exists and billions of consumers are blindly able to purchase it and believe the candle is safe to burn.

- Report # 20161227-FCDAB-2147408893 (12/25/2016)

  Bath and Body Works/White Barn Candle Company 14.5 oz jar candle in French Lavender scent was burning for approximately 1 hour. Suddenly we noticed the candle had caught fire and was engulfed in flames. Flames reached about 5-6 inches high and flames had to be smothered to be put out. Jar was cracked, burned and blackened. This incident occurred without explanation. Candle was near a mirror which was also blackened and burned by flames. Incident caused smoke detectors to go off as well.

- Report # 20170420-D6B58-2147404169 (4/20/2017)

    I used bath and body works candles all the time.  This particular time the flame reached 7 inches and the three wicks had converged into a large flame.  I wasn't able to blow the flame out, or douse it with water.  I had to use a fire extinguisher in order to put out the flame.

- Report # 20170512-168EA-2147401561 (5/11/2017)

    I lit my 3-wick Bath and Body candle and starting watching a movie with my children. About an hour later, I looked over and saw the candle flame was nearly a foot high.  The entire candle container was full of flames.  I had the candle in a Bath and Body Works metal holder.   After a few unsuccessful attempts to extinguish the candle,  I panicked—thinking about the candle catching my house on fire and putting my family's safety at risk.  I grabbed two oven mitts, and tried to move the candle, which caused it to get worse.  This caused me to panic even more, and I picked up the candle, lost control, dropping it to the floor.  The candle shattered, wax splattered all over my kitchen floor, cabinets, and my feet. But it did not nearly extinguish the flame. I was able to get the remainder of the fire extinguisher, but it caused significant damage to the linoleum floor in my kitchen.  The glass that was the candle was completely black.  I have no idea what could cause the candle to do this.   There was no draft, no flammable items nearby, but this terrified me.

- Report # 20170521-60173-2147400335 (5/21/2017)

    I had been biting (sic)the 3wick candle about 1 hour.  I walked away for about 2 minutes when I heard my cat meowing and it sounded like something was sparking.  I came into the living room and seen the candle had flames that were very high and it looked as if all three flames from the wicks combined.  It was burning at a high rate.  I didn't know what to do so I yelled for my wife.  We tried the fire extinguisher it was having problems.  The glass shattered and wax spilled.  My wife ran outside and grabbed some dirt to throw on it which finally put it out.  This was a very scary experience for us and we are glad is wasn't worse than this.

31.    Defendants' typical response to reports filed with the CPSC included an apology for the experience, a statement that it was "committed to customers' safety and satisfaction," and a referral to the BBW call center.[5]

---

[5]  www.saferproducts.gov

32.     Such stock response aside, there is no indication these reports inspired safety modifications or warnings. Defendants remain publicly silent regarding critical facts relevant to the safe use of its three-wick fragrance candles declaring instead its guarantee that consumers would be "100% satisfied with everything from Bath and Body Works."

33.     Upon information and belief, Defendant's customer call records further confirm knowledge and ultimate disregard of the danger imposed on the public.  Indeed, in the matter of *Crystal Lakes v. Bath and Body Works, LLC,* Cause No. 2:16-cv-2989, United States District Court – Eastern District of California, the court entered an order that contained findings indicating Bath & Body Works has received more than a thousand direct-contact complaints of flashover/flare-up incidents.[6] Such findings included reference to call center training materials instructing personnel in its call center to deliver a scripted response to complainants involved in flashover/flare-up incidents, which included the statement: "this has never happened before, but can we get more information * * *."[7]

34.     Despite possessing superior knowledge of the propensity of its three-wick candles to dangerously flashover/flare-up, Defendants intentionally and maliciously continue to deceive the public.

### C. Plaintiffs' Use and Injuries.

---

[6] "Ultimately, a nearly 600-page spread sheet (computer generated in the main) of 1,280 candle flashover incidents was given to plaintiff's counsel." *Crystal Lakes v. Bath and Body Works, LLC,* Cause No. 2:16-cv-2989 [ECF 85, p. 12].

[7] *Crystal Lakes v. Bath and Body Works, LLC,* Cause No. 2:16-cv-2989 [ECF 85, p. 14, fn.3]

35.     Josh McDowell used a 14.5-ounce, Surf Shop three-wick candle from Bath & Body Works, LLC in March of 2022.  The subject candle was light blue wax in a clear glass tumbler container – as a Summer 2021 Edition, the front label displayed a beach and surfboard graphic as the only labeling on the exposed sides of the container.  Noted on the label placed on the bottom of the glass container is UPC 667554753730. The bottom label further references the use of "patented soy blend wax is formulated to provide the best fragrance experience" and approximates 25-45 hours of burn time.

36.     Plaintiff never allowed the candle to burn longer than the suggested "3-4 hours".

37.     On or about March 6, 2022, Plaintiff lit the Bath & Body Works candle to enjoy its scent. Suddenly, the candle produced flames approximately six (6) inches above the rim of the glass tumbler-style container.  The candle had only been lit for approximately one (1) hour.

38.      With the flames at such an unusual, unexpected, and increasingly dangerous height, Josh immediately reacted to prevent the flames from spreading higher.   To decrease the immediate danger and risk of the spread of the flames to the ignition of other property, Josh attempted to blow out the candle, a common and expected method of extinguishing a candle flame.

39.      Rather than snuffing out the candle's flames as expected, the three-wick Bath & Body Works candle flared-up even higher. With no other way to safely blow the candle out, Josh grabbed a tupperware container with water in the hopes of controlling what appeared to be a spreading fire initiated by the flames continuing to rise from the candle. Water, however, did not put out the growing flames. The flame shot up to the ceiling and then came back down to six (6) inches above the rim of the glass container.

40.      Fearing for the safety of his family, Josh put on oven-mitts and removed the candle from inside the home to the concrete walkway in the front of the house. As soon as Josh stepped

outside, the glass jar of the candle spontaneously combusted splattering burning wax onto Josh's stomach and leg. Josh McDowell's ring doorbell camera captured the combustion:





41.     Josh's burns turned a bright pink color and blistered into a deep red color with a scaley texture. Josh was taken to a local emergency room where the Burn unit diagnosed him with second-degree burns to his stomach and on his left thigh reaching down past his knee. The burns,

and subsequent scars, span approximately eighteen (18) to twenty (20) inches long and six (6) to

eight (8) inches wide going from Josh's stomach past his left knee.



42.     Josh was prescribed pain medications and compression pants upon discharge from

the emergency room along with receiving wound and burn care treatment advice.

43.     Josh experienced severe pain from the burns and was unable to work for three weeks

after the incident.

44.     Liliana McDowell was taxed with holding the front door open and shielding

their young child while her husband attempted to remove the combusting candle from their house

before any property caught fire. She was in direct proximity to the event and

contemporaneously observed the injuries to her husband and the danger to her home and family.

The shocking experience impacted her greatly, and she seeks recovery of mental anguish as a

result. She further seeks damages for loss of consortium.

**MISCELLANEOUS**

45.     Plaintiffs aver that any conditions preceding the institution of this lawsuit have been performed, are contemporaneously occurring, and/or have been otherwise waived.

46.     By filing the lawsuit, Plaintiffs neither intend to, nor in fact do, waive or release any right, claim, action, cause of action, defense and/or election of remedy.

47.     <u>Discovery Rule</u>. The defective nature of the three-wick candles is latent and not perceptible until the dangerous flareup occurs.  Plaintiffs did not become aware of the unreasonable and unexpected risk of using the candle or that they had suffered losses in consumer expectations until the candle inappropriately flared and thereafter exploded on Josh's stomach and left leg.

48.     <u>Fraudulent Concealment Tolling</u>. Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of facts as alleged herein. Without any fault or lack of diligence on their part, Plaintiffs could not reasonably have discovered the problems associated with the subject candles on their own until the defect dangerously manifests.

**FIRST CAUSE OF ACTION**
**<u>BREACH OF IMPLIED</u>**
**<u>WARRANTY OF MERCHANTABILITY</u>**

49.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

50.     Defendants are merchants that designed, manufactured, marketed and sold the 14.5 ounce three-wick fragrance candle used by the McDowells.  The three-wick candle, however, in the condition in which it was in at the time it left the hands of the manufacturer/seller, was unfit for safe, ordinary use because the designed placement of the three-wicks within the tumbler-style container allowed the applied fragrance oils to improperly pool, flames conjoin, and flare higher than industry safety recommendations.

51.     At all times, Plaintiffs used the candle in a foreseeable manner.

52.     Implied in the use of Defendants' three-wick candle is the warranty that the product purchased is safe and can lawfully be sold and possessed. When Defendants sold the three-wick candle they implicitly warranted that the product was merchantable in that it was safe, and lawfully sold and possessed.  Despite such implicit warranties, Bath & Body Works sold a candle that was unfit for safe use even when used as expected.  An unbalanced fragrance load along with a wick placement that creates a candle flame height higher than 3 inches cannot pass as unobjectionable in the trade, and Plaintiffs assert Defendants breached the implied warranty of merchantability when it sold the subject candle.

53.     The McDowells did not reasonably expect flames to reach a height more than three inches above the glass container; certainly not to a height of six inches or greater. It is reasonable for consumers like the McDowells to anticipate they can use a product that at least meets the average safety quality expected.  Indeed, the candle industry concurs that flame heights are subject to expected fire safety designs – ASTM F-2417.  F2417-09, Standard Specification for Fire Safety for Candles, notes a maximum flame height requirement "up to 3 inches."  The subject candle did not conform to these expectations.

54.     Furthermore, cautionary labels specific to the three-wick fragrance candles at issue should include additional manufacturer instructions for burning candles safely and warnings regarding the unique propensity of the candle to flashover/flare-up.  The three-wick candles designed and manufactured by the Defendants pose dangers not addressed in the warning labels placed on the candle container, including an exponential increase in high flames and flashover/flare-up, and yet Defendants provide no additional warnings or instructions.

55.     The implied warranty of merchantability assures buyers that goods are, among other things, "fit for the ordinary purposes for which such goods are used." TEX. BUS. & COM. CODE § 2.314(b)(3).  No reasonable consumer would knowingly purchase a product that is

defective, unreasonably dangerous, or improper for its designed use. Nor would any reasonable consumer agree to use a product that caused physical harm or property damage if aware of additional hazards.  Sale of candles with a latent defect that cannot be known until the product dangerously fails breaches the implied warranty of merchantability.

56.     Defendants warranted to the McDowells that the candle was designed, manufactured, and distributed in such a way that such candles have appropriate fragrance loads, wick placement, safe waxes, and sufficient warnings or instructions to safely use same. Defendants' failures caused direct damages to the Plaintiffs that Defendants should have foreseen or contemplated considering the ongoing reports of the dangerous nature of the three-wick fragrance candles at issue. Plaintiffs furthermore suffered personal injury damages for which they seek recovery.

57.     Defendants timely received notice of the incident and breach of warranty as to these Plaintiffs and further was on notice of the breach of warranty alleged herein by reason of its own knowledge of the defect in the candles.  Defendants, however, have failed to remedy the breach.

58.     As a direct and proximate result of Defendants' breach of the Implied Warranties, Plaintiffs have been damaged as alleged herein in an amount to be proven at trial, including recovery for interest and costs.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

59.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

60.     While burning the candle within the recommended time frame listed on the product, the three-wick candle dramatically and unexpectedly flared resulting in abnormally high flames. Ultimately, the subject candle experienced a flashover/flare-up event beyond the confines of the glass container, which seriously injured Josh McDowell as he attempted to extinguish the candle.

61.     BBW, acting in a joint enterprise and/or joint venture with Global Tech, was the designer, developer, tester, manufacturer, and seller of the 14.5-ounce, Surf Shop, three-wick candle used by the McDowells. At all times relevant, Defendants had a duty to exercise reasonable care, in compliance with the existing standards of care in the preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion and sale of candles, including the candle used by the McDowells.

62.     Defendants knew or should have known that the 14.5 ounce, three-wick scented candle was dangerous and prone to excessive flare or flashover/flare-up.  Indeed, Defendants surely cannot in good faith deny its awareness of the potential of its fragrance three-wick candles to spontaneously flare or flashover/flare-up and causing serious injuries considering the numerous complaints submitted to the Consumer Product Safety Commission, direct consumer reports, and litigation.

63.     As a direct and proximate cause of Defendants' negligence, Plaintiffs suffered real and painful injuries, fear, and fright from the incident that gives rise to this lawsuit.  They further incurred medical and other expenses.

64.     Furthermore, Defendants intentionally, willfully, deliberately, and with conscious disregard for the safety of persons failed to modify, investigate, or alter the testing of the product, and failed to warn potential consumers about the propensity for a flare or flashover/flare-up of BBW three- wick candles despite knowing the danger was not limited to a single fragrance scent or single manufacture date.  Instead, Defendants intentionally misled consumers regarding the danger.

65.     Defendants knew or should have known that the 14.5 ounce, three-wick scented candle was dangerous and prone to excessive flare or flashover/flare-up.  Indeed, Defendants surely cannot in good faith deny its awareness of the potential of its fragrance three-wick candles to

spontaneously flare or flashover and causing serious injuries considering the numerous complaints submitted to the Consumer Product Safety Commission, direct consumer reports, and litigation.

66.     Defendants further compound the harm posed by these candles by deceiving consumers contacting the call center – as alleged supra, Defendants provide employees in call centers with a scripted response to calls regarding high flames, flares, and flashover/flare-up events that denies any prior notice of similar events. Such conduct rises to the level of gross negligence.

67.     Upon information and belief, Plaintiffs further assert that Defendants fail in their reporting obligations to the Consumer Product Safety Commission to the detriment of consumers. Although manufacturers, distributors, and/or retailers of consumer products have a legal obligation to immediately report information regarding a product that creates a substantial risk of injury or an unreasonable risk of serious injury, Defendants obfuscates the danger through internal claims coding, reporting lack of knowledge, or claiming isolation of incident. The reporting duty is triggered within twenty-four hours of obtaining reportable information, and in no case greater than 10 working days of investigation. Plaintiffs allege such actions establish a pattern of willful conduct not only violative of the CPSC obligations for which there is civil remedy, but also as proof of gross negligence and/or willful or malicious conduct committed with disregard for the safety of Plaintiffs.

68.     Josh and Liliana seek all damages allowed under Texas state law, including exemplary damages resulting from the gross negligence of Defendants and Global Tech pertaining to design, failure to warn despite knowledge of danger, and failure to properly instruct consumers in the safe manner of addressing an unusually high flame or flashover/flare-up event.  Plaintiffs plead for fair and just compensation for all elements of damages recognized under existing law against the Defendants. They also seek any legal pre-judgment and post-judgment interest to which they may be justly entitled.

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY**

69.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.

70.    The three-wick fragrance candle in question deviates significantly from applicable standards. The wax pool created by the wick placement, fueled by high fragrance levels, caused an extreme flame that ultimately erupted from the glass container into the body of Josh McDowell. Proper wick placement or adjustment to the size of the glass tumbler so that additional spacing between wicks provides a safer design option to mitigate against risks of flames conjoining into a singular, dangerous flame.  Proper manufacturing process controls regarding fragrance loads or oil/wax balancing, inclusive of quality control processing, would further mitigate against the risk of an unsuspecting consumer being confronted with the flashover/flare-up incident.

71.    Certainly, these Defendants possess ultimate control over the labeling, warnings and safety instructions.  Considering the specific knowledge of these Defendants due to reports of similar flare events, Defendants failed in the obligation to adequately warn consumers of the danger posed by these designs and manufacturing instability risks.

72.    At all times relevant to this cause of action, Defendants jointly and collectively were manufacturers, designers, distributers, and/or individuals and/or entities which placed a defective product into the stream of commerce. The 14.5 ounce three-wick fragrance candle product was supplied by these Defendants in the defective condition, which rendered it unreasonably dangerous, and the defective condition was the proximate cause of the injury, harm, and/or damage to Plaintiff.

73.     Section 402A of the Restatement (Second) of Torts provides that (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. Under section 402A, the seller of a product that is in a defective condition unreasonably dangerous to the ultimate user or consumer will be liable to that user or consumer.

74.     Defendants owed a duty to develop, design, manufacture, market, sell, distribute, and/or place into the stream of commerce products that are not unreasonably dangerous to consumers. The Defendants breached such duties by continuing the sale of the 14.5 ounce three-wick fragrance candles while knowing of the dangerous propensity of such candles to suddenly flare or flashover/flare-up and the likelihood to cause serious injury.

75.     Although being informed by more than one thousand individuals of the dangerous propensity of the candles to suddenly flare and flashover/flare-up, causing injuries and property damage, Defendants refused to warn consumers or provide necessary safety instructions of how to protect themselves and their property from a high flame or flashover/flare-up event.   The McDowells behaved as expected when confronted with high flames, and the result was horrific.

76.     As a direct, producing, and proximate result of the defective condition of the 14.5 ounce three-wick candle product, the Plaintiffs have suffered and continue to suffer personal injuries and damages.

## FOURTH CAUSE OF ACTION
## DECEPTIVE TRADE PRACTICES

77.     Plaintiffs incorporate by reference each allegation in the preceding paragraphs.

78.     The candles are "goods" as defined by Texas Deceptive Trade Practices Act (DTPA) Tex. Bus. & Comm. Code § 17.45(1).

79.     The Defendants are "persons" as defined by the DTPA. Tex. Bus. & Comm. Code § 17.45(3).     The DTPA defines "person" as an individual, partnership, corporation, association or other group, however organized.

80.     Plaintiffs are consumers within the meaning of § 17.45(4) of the DTPA in that they are individuals who acquired by purchase the goods or products that form the basis of this lawsuit and suffered damages for which they did not receive full remedy or compensation from any third party, person, or entity.

81.     Although Defendants' positioning with the Consumer Protection Services Division and complaining consumers feigns surprise at flashover/flare-up incidents and disclaims prior knowledge of the danger, Defendants knowingly and intentionally refuse to alter the design, manufacture, instructions or warnings of three-wick candles. The direct result of such conduct is that consumers like the McDowells are (1) unaware of the dangerous propensities of the subject candles to flashover/flare-up, (2) unaware of specific instructions or recommendations to address the risk, and (3) unaware of proper safety steps to address a flare incident unique to fragrance candles with flames at unusual and unsafe heights.

82.     *DTPA and Breach of Warranty.*  A consumer may maintain an action under the DTPA for practices that breach an express or implied warranty and constitute a producing cause of economic damages or damages for mental anguish. Business and Commerce Code §17.50(a)(2). Plaintiff specifically incorporate the factual allegations pleaded in support of their breach of warranty claims (Count I).

83.     The implied warranty of merchantability assures buyers that goods are, among other things safe for ordinary use. TEX. BUS. & COM. CODE § 2.314(b)(3).  Although used in conformity with the limited instructions found on the label affixed to the bottom of the candle, the candle flared to unreasonably dangerous heights. Additionally, the McDowells reacted in a reasonable and foreseeable manner to the flashover/flare-up event.  The failure of Defendants to not only provide a safe product but further to instruct and warn consumers of how to safely handle a flashover/flare-up event constitutes a violation of the DTPA for purposes of enforcement of a breach of warranty.

84.     *DTPA and Unconscionable Acts – BBW and L Brands.* A consumer may maintain an action under the DTPA for unconscionable actions or course of actions that constitute a producing cause of economic damages or damages for mental anguish.  Business and Commerce Code §17.50(a)(3).

85.     Defendants have engaged in a course of action intended to suppress dissemination of information that would publicize the danger and risk of its 3-wick fragrance candles. Defendants further intentionally avoided admitting its knowledge and failed to provide adequate warnings or sufficient instructions regarding how to safely handle the likelihood of a flashover/flare-up event. Defendants' refusal to publicly acknowledge the experiences of hundreds of consumers reports, failure to fully report and provide investigative materials to CPSC requests, and/or make refinement to the product itself or the state of warnings and instructions takes advantage of individual consumers, such as the McDowells, lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

86.     For an act or course of actions to be considered unconscionable under the DTPA, the McDowells are not required to show that the Defendants acted with any form of culpable mental state, such as acting intentionally, knowingly, or with conscious indifference, although such mental

states provide an avenue for increased recovery. The McDowells did not possess the necessary advance knowledge, ability, or experience to be prepared for or subsequently handle a flashover/flare-up event.   Although they attempted foreseeable methods to handle the flashover/flare-up (such as attempting to blow out the candle, throw water on the flame, and ultimately remove the dangerous product from the home and use a powerful garden hose to quench the fire), information available to but withheld by the Defendants could avoided the damages had it been provided to the Plaintiff.

87.   Defendants and Global Tech takes advantage of what they fully realize is a lack of consumer knowledge to a grossly unfair degree.  Although they are wholly aware not only of the danger but of consumers seeking information and insight as to how to prepare for the risk or handle the consequent dangerous flashover/flare-up, Defendants and Global Tech refuse to (1) mitigate against flashover/flare-up events through design modifications or fragrance load oversight and (2) mitigate against producing damages from a flashover/flare-up event through warnings and instructions.

88.   *Knowing and Intentional Conduct of Defendants and Global Tech.*  Although a particular culpable mental state is not required under the DTPA, in the event an act or course of actions occurs knowingly and intentionally Plaintiff may recover additional damages.

89.   In the face of direct consumer concerns, Defendants and Global Tech knowingly, intentionally and actively conceal the danger inherent in their three-wick candle design and refuse to modify warnings or instructions specific to flare events.  Despite possessing superior knowledge of design, manufacture, and quality deficiencies, the Defendant continued the sale of the subject candles without investigating, modifying or altering the design or increasing manufacturing oversight of same.

90.     As pleaded above, the Defendant's conduct in engaging in such false, misleading, and deceptive acts or practices constituted a producing cause of the damages suffered by Plaintiffs and such that the Plaintiff have the right and standing to maintain an action against Defendant under the Texas DTPA pursuant to §17.50. Furthermore, because the Defendant's conduct as described above was committed knowingly and/or intentionally, Plaintiffs are entitled to be awarded treble damages calculable in the aggregate of the actual damages according to proof.

91.     Plaintiffs aver that providing separate notice specifically referring to Section 17.505 prior to filing suit was unnecessary considering the scope of Defendant's actual and constructive knowledge of the defect and the notice of incident involving the McDowells, the research conducted by the CPSC requiring a response from Defendants, the effort to address the incident immediately thereafter in offer another three-wick candle, and the injuries sustained.

92.     False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are subject to action by the Texas Consumer Protection Division under Sections 17.47, 17.58, 17.60, and 17.61 of the Act. Plaintiffs previously complied with the requirements of Section 17.501 regarding notice of this Complaint to the Consumer Protection Division; Plaintiffs also forward a copy of the subject pleading in conformity with these notice requirements.

## **RELIEF REQUESTED**

93.     Plaintiffs respectfully requests that the Court grant the following relief and/or enter judgment against the Defendants as follows:

a)      Plaintiffs seek economic relief under common law and designated statutory provisions for the personal injuries they have suffered.  Such damages include past and future medical expenses, lost earnings and earning capacity, monetary recovery for mental anguish, pain and suffering, disfigurement, and loss of consortium.

b)      Award punitive damages upon proof of knowing and intentional gross negligence or malicious behavior;

c)      Award all damages statutorily available to Texas consumers/owners in light of the deceptive trade practices of the Defendants, including but not limited to the trebling of damages and the awarding of attorney fees;

d)      Award restitution as provided by law, inclusive of appropriate pre-judgment interest;

e)      Award reasonable and necessary attorneys' fees and costs; and

f)      Award such other and further relief in law or in or equity as the Court determines fair, reasonable, appropriate, and/or just deems just.

## **PRAYER**

For the above reasons, Plaintiffs pray that upon final trial and hearing they receive judgment against the Defendants, jointly and severally, together with interest on the judgment at the legal rate, pre-judgment interest, costs of court and for such other and further relief, both in law and equity, to which the Plaintiffs may be justly entitled.

Respectfully submitted,

**MATÍAS J. ADROGUÉ** PLLC

By: _____
Matías J. Adrogué
Texas State Bar No. 24012192
Southern District ID. 30647
Leila M. El-Hakam
Texas State Bar No. 24007147
Southern District ID. 665005
1629 West Alabama St.
Houston, Texas 77006
713-425-7270 *Telephone*
713-425-7271 *Facsimile*
service@mjalawyer.com
**ATTORNEYS FOR PLAINTIFFS**